UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROY LESTER BROOKS,<br><br>    Petitioner,<br><br>    v.<br><br>ERIC ARNOLD,<br><br>    Respondent. | No. 2:16-cv-1689 JAM DB P<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges a judgment of conviction entered against him in the Sacramento County Superior Court on counts of assault with a firearm, shooting a firearm in a grossly negligent manner, felon in possession of a firearm, making a criminal threat, and vandalism. He seeks federal habeas relief on the grounds that: (1) the trial court violated petitioner's due process rights in its rulings on various questions posed to a key witness; (2) testimony that petitioner carried a gun violated due process; (3) the cumulative effect of those errors was prejudicial; and (4) part of petitioner's sentence should have been stayed. Upon careful consideration of the record and the applicable law, the undersigned will recommend denial of petitioner's application for habeas corpus relief.

////

////

1

# FACTUAL BACKGROUND

The California Court of Appeal for the Third Appellate District provided the following factual summary:

> On December 21, 2011, Greg Canterbury was working as a mechanic at Big K Tires on Stockton Boulevard in Sacramento. Canterbury also leased space from Big K's owner, Gerald Bean, to work on additional vehicles. Defendant's car was one such "side job." Around 6:00 p.m., while Canterbury was working on a vehicle for one of Big K's customers, defendant arrived and was "upset" because of the "lack of work being done on his vehicle." Canterbury explained to defendant that he would work on his car later that night. Defendant left. Canterbury then went to dinner with a girlfriend, Carrie Zebley, and one of her friends. They left for dinner in one of Bean's vehicles, leaving Zebley's truck parked at Big K. When they returned from dinner a couple of hours later, they found the windshield of Zebley's truck had been smashed. The windshield of another customer's vehicle was also smashed. A bent steel pipe that appeared to match the damage done to both vehicles was on the ground next to Zebley's truck. Canterbury asked Bean about the vandalism, who "threw his hands up and said it was [defendant]."
>
> About five minutes later, defendant returned to Big K. Canterbury confronted defendant, which led to an exchange of heated profanity and an admission from defendant that he had smashed Zebley's windshield. At some point during the argument, defendant picked up the metal pipe, dropped it again, and walked away from the confrontation. Canterbury then picked up the pipe, intending to use it to smash defendant's windshield. According to Canterbury's testimony, after walking over to where defendant's car was parked, he "decided better of it and threw the pipe over [a] fence." Immediately after throwing the pipe, Canterbury heard a gunshot and turned around to find defendant pointing a gun at him. Defendant was 20 to 30 feet away from Canterbury. Canterbury was "very angry" and started walking towards defendant. He explained: "When I seen he had the gun, I started to walk towards him, and I think I told him to shoot me. And he put the gun away and started heading for the gate." Defendant walked off of the Big K property and then ran down the street.
>
> Meanwhile, Zebley had called 911. Police arrived three or four minutes later. One of the officers spoke with Zebley, who said defendant fired the gun in the air and then pointed it at Canterbury. While Canterbury was talking to a different officer, defendant called his cell phone several times. The officer instructed Canterbury to answer. Canterbury put the call on speaker phone and asked defendant why he fired the gun at him. Defendant answered: "I just wanted to show you who I was." Defendant also called Bean. As Bean explained the phone call: "He was saying that he felt like he messed up and that it was—if he messed up, and he messed up his life, or whatever, that he was going to do it right, or whatever, you

////

2

> know? That he's going to, basically, come back and finish the job."
> Bean understood this to mean defendant would come back and shoot both him and Canterbury.

People v. Brooks, No. C072134, 2015 WL 832575 (Cal. Ct. App. Feb. 26, 2015).[1]

## PROCEDURAL BACKGROUND

On August 14, 2012, the jury found petitioner guilty on all counts. (CT 274-75.[2]) In a bifurcated proceeding, the trial court found true allegations that petitioner was previously convicted of three strike offenses within the meaning of the three strikes law, Cal. Pen. Code, §§ 1170.12, 667. Granting the government's request to strike two of petitioner's prior strikes, the trial court sentenced him to serve 29 years and 4 months in state prison. The court entered judgment on September 14, 2012.

Petitioner appealed. He raised the following claims on appeal:

(1) the trial court prejudicially abused its discretion and violated his constitutional rights by:

    (a) allowing the prosecutor to ask leading questions during his direct examination of Carrie Zebley, whom the trial court found to be hostile to the prosecution,

    (b) restricting defense counsel's use of leading questions on cross-examination, and

    (c) overruling various other objections to the prosecutor's questioning of Zebley;

(2) the trial court also prejudicially abused its discretion by admitting evidence defendant customarily carried a firearm;

(3) the cumulative effect of the foregoing assertions of error amounted to a violation of defendant's constitutional right to due process; and

////

////

---

[1] A copy of this opinion can also be found as an exhibit to the Answer. (See ECF No. 18-1.)

[2] On December 14, 2016, respondent lodged the state court record with this court. (See ECF No. 19.) "CT" refers to the Clerk's Transcript. "RT" refers to the trial transcript. "LD" refers to the lodged documents.

3

(4) the sentence imposed for possession of a firearm by a convicted felon should have been stayed pursuant to Cal. Penal Code § 654.

(LD 5 (Appellant's Opening Brief).)

The California Court of Appeal affirmed the conviction and sentence. Brooks, 2015 WL 832575, at *13. It modified the judgment in one respect because the trial court failed to impose a sentence on the conviction for shooting a firearm in a grossly negligent manner before staying execution of that sentence.

Petitioner filed a petition for review with the California Supreme Court. (LD 13.) Therein, he raised the same four claims raised in the Court of Appeal. The California Supreme Court denied review on June 10, 2015. (LD 14.) Petitioner does not appear to have sought habeas relief in the state courts.

## STANDARDS OF REVIEW APPLICABLE TO HABEAS CORPUS CLAIMS

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision.

Greene v. Fisher, 565 U.S. 34, 37 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "'may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably.'" Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 567 U.S. 37 (2012)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct." Id. at 1451. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 76-77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003) (quoting Williams, 529 U.S. at 405-06). "Under the 'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] [Supreme] Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.'" Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413); Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411; see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 ("It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." (Internal citations and quotation marks omitted.)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

There are two ways a petitioner may satisfy subsection (d)(2). Hibbler v. Benedetti, 693 F.3d 1140, 1146 (9th Cir. 2012). He may show the state court's findings of fact "were not supported by substantial evidence in the state court record" or he may "challenge the fact-finding process itself on the ground it was deficient in some material way." Id. (citing Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004)); see also Hurles v. Ryan, 752 F.3d 768, 790-91 (9th Cir. 2014) (If a state court makes factual findings without an opportunity for the petitioner to present evidence, the fact-finding process may be deficient and the state court opinion may not be entitled to deference.). Under the "substantial evidence" test, the court asks whether "an appellate panel, applying the normal standards of appellate review," could reasonably conclude that the finding is supported by the record. Hibbler, 693 F.3d at 1146 (9th Cir. 2012).

The second test, whether the state court's fact-finding process is insufficient, requires the federal court to "be satisfied that any appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate." Hibbler, 693 F.3d at 1146-47 (quoting Lambert v. Blodgett, 393 F.3d 943, 972 (9th Cir. 2004)). The state court's failure to hold an evidentiary hearing does not automatically render its fact-finding process unreasonable. Id. at 1147. Further, a state court may make factual findings without an evidentiary hearing if "the record conclusively establishes a fact or where petitioner's factual allegations are entirely without credibility." Perez v. Rosario, 459 F.3d 943, 951 (9th Cir. 2006) (citing Nunes v. Mueller, 350 F.3d 1045, 1055 (9th Cir. 2003)).

If a petitioner overcomes one of the hurdles posed by section 2254(d), this court reviews the merits of the claim de novo. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error,

we must decide the habeas petition by considering de novo the constitutional issues raised."). For the claims upon which petitioner seeks to present evidence, petitioner must meet the standards of 28 U.S.C. § 2254(e)(2) by showing that he has not "failed to develop the factual basis of [the] claim in State court proceedings" and by meeting the federal case law standards for the presentation of evidence in a federal habeas proceeding. See Cullen v. Pinholster, 563 U.S. 170, 186 (2011).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[I]f the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, [this court] may consider both decisions to 'fully ascertain the reasoning of the last decision.'" Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc) (quoting Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005)). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 133 S. Ct. 1088, 1091 (2013). When it is clear, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

////

////

////

////

**PETITIONER'S CLAIMS**

**I.    Rulings re the Examination of Carrie Zebley**

In his first claim, petitioner contends trial court rulings regarding the questioning of witness Zebley violated his due process rights.[3]  Specifically, petitioner argues three sets of trial court errors:[4]  First, he contends that the trial court erred when it classified Zebley as a witness hostile to the prosecution.  His counsel made four objections at trial that the prosecutor's leading questions were inappropriate.  Each objection was overruled.  Those questions asked Zebley about statements she made to the police and statements she made to the 911 operator.  In the fourth question, the prosecutor asked Zebley, "As you sit here today, you don't want to have to testify?"  Zebley responded that she did not.

Second, petitioner contends that the trial court inappropriately restricted defense counsel's use of leading questions on cross-examination.  After initially permitting defense counsel to ask some leading questions, and noting that Zebley responded to each by answering "yes" when she had been evasive when answering the prosecutor's leading questions, the trial court granted the prosecutor's objection to the defense's use of leading questions.  See Brooks, 2015 WL 832575, at *5.

Third, petitioner objects to a variety of other trial court rulings:  (a) overruling an "asked and answered" objection where Zebley did not answer the question until the third time it was asked; (b) overruling an "argumentative" objection to a question asking Zebley whether, after hearing the 911 tape, she heard herself mention self-defense, (c) overruling an argumentative

---

[3] In his petition, petitioner also points to other questions to which his trial attorney did not object.  Because petitioner did not raise issues of ineffective assistance of counsel or prosecutorial misconduct in the state court, those issues are unexhausted and this court may not consider them.  See 28 U.S.C. § 2254(b)(1).

[4] In his petition, petitioner simply cites the Fourteenth Amendment's Due Process Clause and then proceeds to set out the factual bases for his claim, citing extensively to the trial transcript.  (See ECF No. 1 at 7-13.)  Because petitioner is proceeding in pro se, the court has reviewed petitioner's state court pleadings in an attempt to discern his legal arguments.  Petitioner's claims are based almost solely on state law.  He raised the due process issue briefly in arguing that the effect of each of these evidentiary errors violated petitioner's rights under the Fourteenth Amendment.  (See LD 5 (AOB) at 27; LD 13 (Pet. for Rev.) at 19.)

objection when the prosecutor asked about conflicts between what Zebley told a detective and what she testified to at the preliminary hearing; (d) overruling an argumentative objection to a question about why Zebley referred to one of her responses at the preliminary hearing as "confusing;" (e) overruling an argumentative objection to the prosecutor's question about Zebley's confusion; (f) overruling a 352[5] objection to a question asking Zebley to explain preliminary hearing testimony that indicated a statement she had given a detective was not accurate; (g) overruling an argumentative objection to the prosecutor's question about Zebley's change in statements; and (h) overruling another argumentative and 352 objection, but with a warning to the prosecutor, about Zebley's change in statements.

**A. Legal Standards for Trial Court Evidentiary Rulings**

It is well established that "federal habeas corpus relief does not lie for errors of state law." Estelle, 502 U.S. at 67 (citing Lewis v. Jeffers, 497 U.S. 764, 780 (1990)); see also Wilson, 562 U.S. at 5; Pulley v. Harris, 465 U.S. 37, 41 (1984). Thus, whether a petitioner's "due process rights were violated by the admission of evidence . . . . is [usually] no part of a federal court's habeas review of a state conviction." Id.; see also Rhoades v. Henry, 638 F.3d 1027, 1034 n.5 (9th Cir. 2011) ("[E]videntiary rulings based on state law cannot form an independent basis for habeas relief.").

Nonetheless, courts have held that the erroneous admission of evidence at trial may violate due process if "the evidence so fatally infected the proceedings as to render them fundamentally unfair." Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991); accord Gonzalez v. Knowles, 515 F.3d 1006, 1011 (9th Cir. 2008). However, "[t]he Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process." Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009). Indeed, the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due

////

---

[5] California Evidence Code § 352 allows a trial court to exclude evidence if its probative value is substantially outweighed by the possibility that it will unduly consume time or will prejudice, confuse, or mislead the jury.

process violation sufficient to warrant issuance of the writ." Id. (citation omitted); see also Munoz v. Gonzales, 596 F. App'x 588 (9th Cir. 2015) (same; citing Holley, 568 F.3d at 1101).

**B. State Court Opinion**

Because the California Supreme Court denied review, the decision of the California Court of Appeal is the last reasoned decision of a state court on petitioner's claims. The Court of Appeal found the trial court did not abuse its discretion on any of the grounds argued by petitioner. Each of petitioner's arguments was based on state law and each of the court's conclusions was as well. See Brooks, 2015 WL 832575, at * 2-8. The Court of Appeal then considered petitioner's contention that the trial court's rulings violated his Fourteenth Amendment rights to due process and a fair trial. The court held:

> "[R]ejection on the merits of a claim that the trial court erred on the issue actually before the court necessarily leads to rejection of the newly applied constitutional 'gloss' as well. No separate constitutional discussion is required in such cases, and we therefore provide none." (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 990, fn. 5.)

Id. at *8. In other words, because the Court of Appeal found no trial court error in the evidentiary rulings regarding Zebley's testimony, it goes without saying that petitioner's trial was not fundamentally unfair.

**C. Analysis**

The first step in this court's analysis is determining whether petitioner has shown the California Court of Appeals' opinion is contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1). The Ninth Circuit has held that "even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by 'clear established Federal law,' as laid out by the Supreme Court." Holley, 568 F.3d at 1101.

Petitioner's case does not even come close to this standard. First, in determining whether the admission of evidence was erroneous, this court is bound by the state court's interpretation of state law. See Bradshaw v. Richey, 546 U.S. 74, 76 (2005). Here, the state court found no error in the trial court's rulings on counsel's objections.

Second, as discussed in more detail below, petitioner fails to show that the questions asked or the answers provided rendered his trial fundamentally unfair. Zebley did not simply agree with the prosecutor's leading or argumentative questions and the evidence obtained by her responses to many questions was apparent from other evidence – the 911 tape recording, her statements to police officers, and, later, to a detective, and her preliminary hearing testimony.

Finally, and most importantly, petitioner fails to show, and this court cannot find, any clearly established Supreme Court precedent that rulings on a prosecutor's use of leading questions, limitations on the defense's use of leading questions, or various other objections can amount to a violation of the Due Process Clause. See Holley, 568 F.3d at 1101 (finding no clearly established Supreme Court precedent to support a claim of trial court error in admitting irrelevant or prejudicial evidence even where admission of that evidence was "fundamentally unfair" under Ninth Circuit precedent); see also Zapien v. Martel, 805 F.3d 862, 869 (9th Cir. 2015) (because there is no United States Supreme Court case establishing the fundamental unfairness of admitting multiple hearsay testimony, Holley bars any such claim on federal habeas review). Where there is no clearly established Supreme Court precedent, it is not possible to conclude that the state court's reasoning was contrary to, or an unreasonable application of, it. See Carey v. Musladin, 549 U.S. 70, 77 (2006) ("Given the lack of holdings from this Court...it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"). Therefore, under § 2254(d)(1), petitioner's first claim should fail.

Even if the court disregards petitioner's inability to satisfy § 2254(d)(1), he fails to show that allowing these questions, and admitting this evidence, rendered his trial fundamentally unfair. There was plenty of evidence that Zebley gave various statements at various times. In her first statements to police, she did not mention that petitioner may have shot the gun because he felt threatened by Canterbury. She did not tell the 911 operator that Canterbury was advancing toward petitioner when petitioner shot the gun. (See RT 195.) She told the police officer who arrived at the scene that she saw petitioner "pull out" a handgun and "fire into the air" and that he pointed the gun at Canterbury. (RT 328.) Prior to trial, she contacted the district attorney's office and spoke with an investigator there. (RT 304.) She told him that she wanted to change her

11

statement to reflect that Canterbury had been holding a metal pipe and yelling at petitioner and petitioner fired the gun in self-defense. (RT 306.) At the preliminary hearing, Zebley testified that she heard a gunshot, turned around, and saw petitioner holding a gun. (CT 129.) She testified that Canterbury was not walking toward petitioner with the metal pipe but was walking toward petitioner's car with it. (CT 135.) She testified that she did not believe petitioner fired the gun to keep Canterbury from advancing toward him. (CT 136.) At trial, Zebley testified that she saw Canterbury holding the pipe and advancing towards petitioner. (TR 200, 205.)

Petitioner argues that Zebley was the most important witness to his defense because she and Canterbury were the only eyewitnesses who testified. However, the record shows that both the prosecution and the defense had the opportunity to question her about these statements, and the reasons she may have made them. Nothing indicates that the prosecutor's questions resulted in evidence that was unfairly prejudicial to petitioner.

## II. Admission of Evidence that Petitioner Carried a Firearm

Petitioner alleges that the admission of Bean's testimony that petitioner customarily carried a firearm violated his due process rights. In response to a defense pretrial motion to limit Bean's testimony, the trial court held a hearing under Evidence Code § 402.[6] At that hearing, Bean testified that he had known petitioner for about twenty years and had never seen him with a gun. However, petitioner had occasionally told Bean he had a gun and, shortly before the shooting at issue in this case, had told Bean he kept a gun in his car. In addition, right after the shooting, petitioner called Bean and told him he was "coming back to finish the job." (RT 155-165.)

Over defense objections, the trial judge determined that the evidence was relevant, even if petitioner plead to the criminal threats charge, and its prejudice did not outweigh its probative value. (RT 174-178.) Bean then testified before the jury. The jury was instructed that it could not consider the evidence to infer that petitioner had a firearm on the day of the shooting, but only to consider how Bean's fear of retaliation affected his credibility. The Court of Appeal found, on

---

[6] This code section permits a trial court to hear evidence and determine its admissibility out of the presence of the jury.

12

state law grounds, the trial court did not abuse its discretion in admitting this evidence. Brooks, 2015 WL 832575, at *9-10.

Respondent argues that petitioner's due process claim is unexhausted. The exhaustion of state court remedies is a prerequisite to granting a petition for writ of habeas corpus. 28 U.S.C. § 2254(b)(1). A petitioner satisfies the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider all claims before presenting them to the federal court. Picard v. Connor, 404 U.S. 270, 276 (1971); Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir. 1985).

The state court has had an opportunity to rule on the merits when the petitioner has fairly presented the claim to that court. The fair presentation requirement is met where the petitioner has described the operative facts and legal theory on which his claim is based. Picard, 404 U.S. at 277-78. Petitioner did not raise the due process issue in his state court pleadings. (See LD 5 (AOB) at 28-38; LD 13 (Pet. for Rev.) at 20-30.) Accordingly, the claim is unexhausted and should not be considered here.[7]

### III. Cumulative Prejudice

Petitioner argues that the cumulative effect of the errors set out in claims 1 and 2 render his trial fundamentally unfair in violation of the Due Process Clause. However, this court finds no error. The court "cannot consider the cumulative effect of non-errors." Williams v. Filson, 908 F.3d 546, 570 (9th Cir. 2018) (citing Fuller v. Roe, 182 F.3d 699, 704 (9th Cir. 1999), rev'd on other grounds, Slack v. McDaniel, 529 U.S. 473, 482 (2000)); see also Boyde v. Brown, 404 F.3d 1159, 1176 (9th Cir. 2005).

### IV. Consecutive Sentence

Petitioner's fourth and final claim is that substantial evidence did not support a consecutive term for unlawfully possessing a firearm. In his petition, petitioner argues that this consecutive sentence violated his Fourteenth and Eighth Amendment rights. However, in state

---

[7] Even if this court considered the merits of petitioner's second claim, the undersigned would recommend it be denied. As stated in the prior section, there is no clearly established federal law that the admission of this evidence violated due process.

13

court, petitioner argued this claim only as a violation of state law, namely Cal. Penal Code § 654. (LD 5 (AOB) at 41-44; LD 13 (Pet. for Rev.) at 33-35.) The Court of Appeal addressed only the state law arguments made. See Brooks, 2015 WL 832575, at *10-12. Like claim 2, claim 4 is unexhausted and may not be granted in this habeas proceeding. 28 U.S.C. § 2254(b)(1). Even if this court did consider the issue, matters relating to state sentencing generally are not cognizable on federal habeas review. Miller v. Vasquez, 868 F.2d 1116, 1118–19 (9th Cir.1989).

For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's petition for a writ of habeas corpus (ECF No. 1) be denied.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). In the objections, the party may address whether a certificate of appealability should issue in the event an appeal of the judgment in this case is filed. See Rule 11, Rules Governing § 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated: February 12, 2019

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DB/prisoner-habeas/broo1689.fr